CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MICHAEL G. LAGRAMA (CABN 252734)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-436-7241
    FAX: (415) 436-7234
    Michael.Lagrama@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-cr-00202-VC |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| AKAL CALVERT-DAMU ALLEN, SR., | |
| Defendant. | |

## I. INTRODUCTION

As alleged in a single-count Indictment, defendant Akal Allen pleaded guilty to Assault on a Federal Employee Inflicting Bodily Injury in violation of 18 U.S.C. §§ 111(a)(1) and (b)(1). Under the advisory Sentencing Guidelines, Allen is subject to a sentence of between 46 and 57 months. Allen has been in custody since his arrest in this case on June 27, 2023. Thus, at the time of sentencing on October 1, 2025, Allen will have served 27 months (or 2 years, 3 months, and 4 days) in custody. In accordance with the parties' plea agreement, the United States respectfully recommends that Allen be sentenced to time-served followed by 3 years on supervised release. This sentence is sufficient but not greater than necessary to achieve the sentencing objectives in 18 U.S.C. § 3553(a). It appears that

Allen's mental health condition was a primary causative factor in this offense. Indeed, Allen was found not competent to stand trial because of his mental health condition. Then, while in custody, Allen has participated in mental health treatment and voluntarily taken anti-psychotic medication, which has restored his competency. Allen has also stated that he finds his medication to be "helpful" and is willing to continue mental health treatment while on supervised release. To that end, Allen has also agreed to reside at a halfway house for at least the first six months following his release from custody. Based on these and other mitigating factors, a sentence of time-served or 27 months (which is approximately a 41% downward variance from the low-end of the Sentencing Guidelines) is appropriate. Pursuant to the plea agreement, the Court should also order Allen to pay restitution to the victim in the amount of $779.20.

Further, in response to the Court's question during the latest hearing, additional medical information is needed before the Court can order Allen to take antipsychotic medication as a condition of supervised release. Accordingly, the United States concurs with defense counsel's request that Allen be immediately evaluated by a psychiatrist, who can assess Allen's need for continued antipsychotic medication and articulate a medical treatment plan. Given Allen's seeming willingness to continue his medication and medical treatment voluntarily, the United States also concurs with defense counsel's recommendation that Allen be released to community-based treatment in the meantime.

## II. BACKGROUND

### A. Circumstances of Offense

On Thursday, June 8, 2023, at approximately 6:39 p.m., Allen assaulted an FBI employee near the intersection of Polk Street and O'Farrell Street, approximately three blocks away from the San Francisco Federal Building located at 450 Golden Gate Avenue, San Francisco, California 94102. Dkt. 91 (Plea Agreement) at 2. The victim had just left work at the Federal Building minutes earlier and was walking directly home on her regular route. *Id*. Allen approached the victim and, without provocation, punched her in the face with such force that he broke her nose and caused her nose to bleed profusely. *Id*. As a result, the victim was brought to a hospital for emergency treatment. *Id*.

At the time of the assault on June 8, 2023, the victim was on call given her special duties as the FBI Crisis Management Specialist in the FBI's San Francisco Division. Dkt. 91 at 2. In this role, the

victim was responsible for supporting the FBI's Crisis Management and Analysis Team (CMAT), which coordinates the FBI's emergency response to major, unpredictable incidents that threaten public safety and order. *Id*. This included responding to threatened or actual terrorist attacks, catastrophic natural disasters or accidents, and mass casualty incidents (such as mass shootings, violent protests, and multi-vehicle collisions). *Id*. At the time, the victim was the only full-time professional staff (there was also one special agent) responsible for supporting CMAT. *Id*. The victim was also responsible for the full-time management of the Emergency Operations Center. *Id*.

Given her special duties, the victim was on call 24 hours a day, seven days a week, unless she was on pre-approved leave and/or her duties were covered by another qualified FBI employee. Dkt. 91 at 3. At the time that she was assaulted, the victim possessed her FBI issued cell phone so that she could receive and respond to FBI calls, and had an FBI computer at her home so that she could respond to communications and address FBI business while she was at home. *Id*.

### B. Procedural History

On June 26, 2023, Allen was charged in a Criminal Complaint with Assault on a Federal Employee Inflicting Bodily Injury in violation of 18 U.S.C. §§ 111(a)(1) and (b)(1). Dkt. 1 (Complaint). On July 6, 2023, in a single-count Indictment, Allen was indicted for the same offense, Assault on a Federal Employee Inflicting Bodily Injury (Count One) in violation of 18 U.S.C. §§ 111(a)(1) and (b)(1). Dkt. 13 (Indictment). On March 7, 2024, after Allen was evaluated by a psychiatrist and an evidentiary hearing, the Court found Allen not competent to stand trial. Dkt. 43 (Order). The Court remanded Allen to the custody of the Attorney General and the Federal Bureau of Prisons for competency restoration. *Id*. On July 2, 2025, after Allen's competency was restored, he pleaded guilty to Count One of the Indictment. Dkt. 93 (Minute Entry).

### C. Sentencing Guidelines Calculation

U.S. Probation has issued the following advisory Guidelines calculation:

a.  Base Offense Level, U.S.S.G. § 2A2.2(a) (assault under 18 U.S.C. § 111(a)(1))   14
b.  U.S.S.G. § 2A2.2(b)(3)(A) (inflicted bodily injury)   +3
c.  U.S.S.G. § 2A2.2(b)(7) (convicted under 18 U.S.C. §111(b))   +2
d.  U.S.S.G. §§ 3E1.1(a), (b) (acceptance of responsibility)   -3

  e. Final adjusted offense level               16

Presentence Investigation Report (PSR) at 7. U.S. Probation also determined that Allen has a criminal history score of 22 (Criminal History Category VI) and is subject to a Guidelines sentencing range of 46 to 57 months. *Id*. at 19-20, 37. The United States agrees with U.S. Probation's Sentencing Guidelines calculation.

  U.S. Probation recommends that Allen be sentenced to 46 months. PSR at 37. But for the reasons stated below, the United States recommends that Allen, who would have already served 27 months in custody at the time of sentencing, be sentenced to time-served followed by 3 years on supervised release.

### III. DISCUSSION

**A. Legal Standards**

  The Court should impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also* 18 U.S.C. § 3553(a). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the advisory Guidelines. *Id*.

  After determining the appropriate advisory Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness considering the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Under Section 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

  (1) The nature and circumstances of the offense(s) and the history and characteristics of the defendant;

  (2) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (3) The need for the sentence imposed to afford adequate deterrence to criminal conduct;

  (4) The need for the sentence imposed to protect the public from further crimes of the defendant; and

  (5) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

B.     **Sentencing Recommendation by the United States**

The United States respectfully recommends that the Court sentence Allen to time-served followed by 3 years on supervised release and order him to pay restitution to the victim.

1. **Nature and circumstances of Allen's offense and his history and characteristics**

A time-served sentence of approximately 27 months (or 2 years and 3 months) is appropriate based on the particular facts in this case.  Allen committed a serious, violent, and unprovoked offense.  PSR at 5.  Not only did he break the victim's nose and cause her to bleed profusely, but the victim was also rushed to the emergency room the following week and was diagnosed with post-concussion syndrome.  *Id.*  The victim continues to suffer from additional medical issues, such as dizziness and nasal pressure, which may have been caused or exacerbated by Allen's attack.  *Id.*  The victim also continues to suffer an emotional toll from that traumatic experience.  *Id.* at 6.  This was not Allen first violent attack or criminal act.  *Id*. at 8-26.  In fact, Allen has an extensive, decades-long criminal record.  He has various violent, drug-related, and sex offense convictions and numerous arrests.  *Id*.  Ordinarily, Allen's instant offense and criminal record would warrant a longer custodial sentence, but there are substantial mitigating factors in this case.

Foremost among those mitigating factors is Allen's diagnoses for Unspecified Schizophrenia Spectrum and Other Psychotic Disorder and Stimulant Use Disorder, which appear to have been untreated at time of the offense.  PSR at 28, 29.  According to a 2010 mental health assessment, "When [Allen] is without structure, not adherent to meds and is actively using substances, he is at high risk for relapse, decompensation, crisis, violence, harm, and institutionalization." *Id*. at 28.  This 2010 finding, therefore, indicates that Allen's offense in this case was caused, in part, by the failure to adequately treat his mental health condition and his admitted use of marijuana.  *See id*.

Indeed, because Allen exhibited delusions and disorganized thinking in this case, he was found not competent to stand trial for over a two-year period.  PSR at 29.  Allen regained competency after he started to voluntarily take anti-psychotic medication.  Allen finds his anti-psychotic medication to be helpful and is willing to continue participating in mental health treatment.  PSR at 29.  Further, during the more than two years while Allen has been in custody, he has not engaged in any reported violence or

other disciplinary misconduct. It therefore appears that with continued mental health treatment, Allen can be safely released to a half-way house subject to further monitoring by this Court as described in the next section.

Further, Allen has taken full responsibility for his offense by waiving his right to a jury trial and pleading guilty to Count One in the Indictment as soon as he regained competency. PSR at 6; Dkt. 92. Allen has also expressed remorse for his actions (PSR at 6) and, despite his limited financial means, has agreed to pay restitution to the victim in the amount of $779.20. Dkt. 91 at 6. Accordingly, in balancing the aggravating and mitigating factors in this case, a time-served sentence of 27 months followed by 3 years on supervised release is appropriate.

### 2. Need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

A time-served sentence of 27 months followed by 3 years on supervised release also reflects the seriousness of Allen's offense and promotes respect for the law. Although the recommended custodial sentence is a downward variance from the Sentencing Guidelines range, 27 months in custody is still significant, particularly because Allen's untreated mental health condition was likely a causative factor in his offense. Further, the recommended sentence constitutes just punishment because Allen has been removed from the community for over two years and will remain in the Court's constructive custody for an additional 3 years while on supervised release. And during his 3-year, supervised release period, the Court can modify Allen's supervision conditions to further ensure his rehabilitation and the safety of the community.

### 3. Need for the sentence to afford adequate deterrence to criminal conduct

The recommended time-served sentence is also sufficient to deter Allen from engaging further criminal behavior. This case has underscored for Allen the need for his continued mental health treatment. Allen has been subjected to several mental health evaluations and has been prescribed anti-psychotic medication. Not only does Allen find the medication to be helpful, but he has also expressed a desire to continue mental health treatment in the community. PSR at 29. Allen has further agreed to live in a half-way house for at least six months following his release from custody and to participate in mental health counseling and substance abuse treatment for the duration of his supervised release term

as directed by his probation officer. Dkt. 91 at 5. All of this indicates that Allen has gained insight into the importance of maintaining his mental and physical health, so that he does not again devolve into engaging in criminal behavior. Thus, a time-served sentence of 27 months followed by 3 years on supervised release adequately promotes specific deterrence.

### 4. The need for the sentence imposed to protect the public from further crimes by Allen

A time-served sentence of 27 months followed by 3 years on supervised release is, moreover, appropriate to protect the public from further crimes by Allen. This is so because the parties are also jointly recommending that Allen be placed in a half-way house for at least six months and requesting that Allen be medically evaluated for the purpose of devising a medical treatment plan, which will further promote public safety.

### 5. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

Further, a time-served sentence of 27 months would not necessarily result in a sentencing disparity for similarly situated defendants. According to U.S. Probation, during the last five fiscal years (2020-2024), there were 37 defendants whose primary guideline was §2A2.2, with a Final Offense Level of 16 and a Criminal History Category of VI, after excluding defendants who received a §5K1.1 substantial assistance departure. PSR at 33. For the 36 defendants (97%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 48 months and the median length of imprisonment imposed was 46 months. *Id*.

However, these figures from the Judicial Sentencing INformation (JSIN) platform do not indicate whether any of the defendants in the cohort suffered from a mental health condition that rendered them not competent to stand trial and was likely a primary causative factor in the underlying assaultive offense. *See* PSR at 33. Thus, although the government's recommended time-served sentence of 27 months is lower than the average and median sentences imposed on defendants in this JSIN cohort, the lower sentence recommendation is nonetheless justified based on the specific mitigating factors in this case. Accordingly, because Allen is not necessarily similarly situated to the defendants in the cited JSIN cohort, the recommended time-served sentence of 27 months would also not necessarily result in a sentencing disparity.

### C. Further medical evidence is warranted before the Court can impose an ordering requiring Allen to take antipsychotic-medication.

Given the lack of a current medical report regarding the need for Allen to take antipsychotic medication, the Court cannot order him to take such medication involuntarily. "The district court has broad discretion in setting conditions of supervised release, including restrictions that infringe on fundamental rights." *United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir. 1998). However, defendants have a protected liberty interest in refusing antipsychotic medication. *United States v. Williams*, 356 F.3d 1045, 1053-54 (9th 2004). This is because such medication tinkers with a person's mental processes, and it may affect the person's cognition, concentration, behavior, and demeanor. *Id*. at 1054 (citation omitted). Antipsychotic medications may also have serious, even fatal, side effects. *Id*. This may include, for instance, neuroleptic malignant syndrome, which is a relatively rare condition which can lead to death from cardiac dysfunction. *Id*.

As a result, an order requiring a defendant to take antipsychotic medication involuntarily can only be imposed as a supervised release condition if it "involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)." 18 U.S.C. § 3583(d)(2); *Williams*, 356 F.3d at 1056. That is, a district judge must make "an explicit, specific finding" that an involuntary medication order is warranted to afford adequate deterrence, to protect the public from further crimes by the defendant, and to provide the defendant with needed medical care or other correctional treatment in the most effective manner, in accordance with section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D), respectively. *Williams*, 356 F.3d at 1056.

Furthermore, the district court's findings in this respect must be based "on a medically-informed record." *Williams*, 356 F.3d at 1056. In *Williams*, for example, the Ninth Circuit vacated the district court's order requiring a person to take antipsychotic medication as a condition of supervised release. *Id*. at 1057. In so doing, the Ninth Circuit found "there was *no* medical evidence (1) indicating that Williams would not have committed the crimes had he been medicated, or (2) regarding Williams' mental condition at or around the time of sentencing, in general or with particular regard to the need for psychotropic medication to prevent criminal behavior while on supervised release . . . ." *Id*.

1    Here, if Allen continues to voluntarily take his antipsychotic medication because he finds it to be helpful or otherwise consents to ongoing medical treatment in the community, it may not be *reasonably necessary* for the Court to order him to take such medication. *See* 18 U.S.C. § 3583(d)(2); *see Williams*, 356 F.3d at 1056. Even if the Court were inclined to impose an involuntary medication order, it would not be able to do so on this current record. *Id*. Although there is a 2010 report indicating that Allen's propensity to engage in violence is caused in part by his mental health condition, as in *Williams*, there is no *current* psychiatric report confirming that Allen committed the instant offense because he was not taking the proper antipsychotic medication. *See id*. at 1057. Nor is there a current medical finding about the need for Allen to continue his antipsychotic medication to prevent him from engaging in further criminal behavior while on supervised release. *See id*. Therefore, the government concurs with defense counsel's recommendation that Allen be forthwith examined by a psychiatrist who can provide the Court with a report that specifically addresses these issues and articulates a medical treatment plan, which can ensure his further rehabilitation and promote public safety.

## CONCLUSION

With full consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence Allen to time-served followed by 3 years on supervised release. The United States also requests that the Court order Allen to pay the victim restitution in the amount of $799.20.

DATED:    September 24, 2025                Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


*/s/ Michael G. Lagrama*
MICHAEL G. LAGRAMA
Assistant United States Attorney